```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
DARRYL BROWN,                                               :
                                                            :
                              Petitioner,                   :
                                                            :
              -against-                                     :   20-CV-10491 (VSB)
                                                            :
LETITIA JAMES, et al.,                                      :   OPINION AND ORDER
                                                            :
                              Respondents.                  :
                                                            :
------------------------------------------------------------X
```

Appearances:

Joey Jackson
Joey Jackson Law
New York, NY
*Counsel for Petitioner*

Tae-Hoon Charles Won
Bronx County District Attorney's Office
Bronx, NY
*Counsel for Respondents*

VERNON S. BRODERICK, United States District Judge:

     Darryl Brown ("Brown" or "Petitioner") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on December 11, 2020. ("Petition," Doc. 1.) Before me is the Report and Recommendation of United States Magistrate Judge Katharine H. Parker, (the "R&R" or "Report," Doc. 14), recommending that I deny the Petition. Petitioner filed objections to the Report on October 14, 2021. (Doc. 17.) Because Petitioner has failed to show that he was entitled to a justification defense instruction, I ADOPT the Report subject to the exception detailed below and DISMISS the Petition.

I. **<u>Background</u>**[1]

On December 11, 2020, Brown filed a petition for a writ of habeas corpus and supporting memorandum of law.  (Docs. 1–2.)  On June 9, 2021, the Bronx County District Attorney's Office ("DA's Office") filed an opposition to the Petition.  (Doc. 11.)  On July 8, 2021, Petitioner filed his reply brief in support of his Petition.  (Doc. 13.)  On December 15, 2020, I referred the case to Magistrate Judge Parker for a report and recommendation.  (Doc. 5.)

Magistrate Judge Parker issued her Report on August 31, 2021, and notified that parties that they had "fourteen days from the service of [the] Report and Recommendation to file written objections."  (Report 17.)  On September 7, 2021—seven days before objections were due—Petitioner moved for an extension of time to file his objections.  (Doc. 15.)  The following day, I granted Petitioner an additional 30 days to file his objections.  (Doc. 16.)  On October 14, 2021, Petitioner filed objections to the Report.  (Doc. 17.)  The DA's Office did not file any objections or responses to Petitioner's objections to the Report, nor did it seek additional time to do so.

II. **<u>Legal Standards</u>**

    A. *Review of a Magistrate Judge's Report*

In reviewing a magistrate judge's report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  "If a party timely objects to any portion of a magistrate judge's report and recommendation, the district court must make a de novo determination of those portions of the report or specified proposed findings or recommendations

---

[1] For purposes of this Opinion & Order, I assume familiarity with the underlying facts and analysis as set forth in Magistrate Judge Parker's Report.  (Doc. 14.)  I limit my description of the factual and procedural history to only those matters that are relevant to the motion currently under consideration.

2

to which objection is made." *Bush v. Colvin*, No. 15CIV2062LGSDF, 2017 WL 1493689, at *4 (S.D.N.Y. Apr. 26, 2017) (quoting *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015)).

Pursuant to the standard often articulated by the district courts of this Circuit, "[i]f a party . . . simply relitigates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Antrobus v. New York City Dep't of Sanitation*, No. 11CV5434CBALB 2016 WL 5390120, at * 1 (E.D.N.Y. Sept. 26, 2016) (internal quotation marks omitted); *see also Wu v. Good Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575, 579 (2d Cir. 2020) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & C Food Markets., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))); *Pena v. Rivera*, No. 05 CIV3109(LTS)(FM), 2006 WL 2529771, at *1 (S.D.N.Y. Aug. 31, 2006). General and conclusory objections are also only reviewed for clear error. Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [magistrate judge's] proposed findings and recommendations*.")*; *Benitez v. Parmer*, 654 F. App'x 502, 504 (2d Cir. 2016) (holding that "general objection[s] [are] insufficient to obtain de novo review by [a] district court"). Under a clear error standard of review, "[s]o long as there is a basis in the evidence for a challenged inference, [the court] do[es] not question whether a different inference was available or more likely." *United States v. Freeman*, 443 F. App'x 664, 666 (2d Cir. 2011) (quoting *Siewe v. Gonzales*, 480 F.3d 160, 168 (2d Cir. 2007)).

  **B.** *Habeas Relief*

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas petitions under 28 U.S.C. § 2254 may not be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable

3

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). Under the first test, "a writ of habeas corpus will issue only if 'a state court's application of federal law . . . is so erroneous that there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Duhs v. Capra*, 639 F. App'x 691, 694 (2d Cir. 2016) (quoting *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (per curiam)) (alteration in original). "Thus, even a showing of 'clear error' will not suffice." *Id.* (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)). A state court's factual findings are presumed correct unless the petitioner comes forward with clear and convincing evidence to rebut the presumption. 28 U.S.C. § 2254(e)(1).

Furthermore, to qualify as "clearly established Federal law" within the meaning of AEDPA, the law in question must be "'embodied in a Supreme Court holding, framed at the appropriate level of generality.'" *Garlick v. Lee*, 1 F.4th 122, 128–29 (2d Cir. 2021) (quoting *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017). "'A state court decision is contrary to such clearly established law when the state court either has arrived at a conclusion that is the opposite of the conclusion reached by the Supreme Court on a question of law or has decided a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Id.*

### III.  Discussion

I have reviewed the Report in its entirety, and I do not find any clear error. Petitioner almost exclusively repeats the same arguments already rejected by Magistrate Judge Parker. Despite this, I have reviewed Petitioner's objections under a *de novo* standard and find that all objections fail. In several instances, Petitioner refers to and cites to Magistrate Judge Parker's Report as if it were written by Respondent. (*See, e.g.,* Doc. 17 at 8 "Respondent argues . . . " and

"Respondent fails to include . . . ".) In these instances, I interpret Petitioner's criticisms as objections to Magistrate Judge Parker's analysis.

As Magistrate Judge Parker correctly noted, there are three steps to determining whether Petitioner is entitled to Habeas relief: "First, was the petitioner entitled to a justification charge? Second, if so, did the failure to give one result in a denial of due process?  Third, if so, did the state court's contrary conclusion constitute an unreasonable application of clear Supreme Court law?" (Report 8.) Because I do not find that Defendant was entitled to a justification charge, I need not reach steps two and three. *Taylor v. Capra*, 412 F. Supp. 3d 126, 136 (E.D.N.Y. 2019). Under New York Law, "[a] defendant is entitled to a justification charge only where a reasonable view of the evidence, viewed in the light most favorable to the defendant, would support a finding of that defense." *People v. Irizarry*, 157 N.Y.S.3d 287, 288 (1st Dep't 2021). New York's justification statute provides that a person may not "use physical force upon another person . . . to defend himself . . . from what he . . . reasonably believes to be the use or imminent use of unlawful physical force" if they are the "initial aggressor." N.Y. Penal Law § 35.15(1)(b). The statute also provides that even if a person is entitled to use defensive force against another, that force may not be deadly unless the person "reasonably believes that such other person is using or about to use deadly physical force." N.Y. Penal Law § 35.15(2)(a). The initial aggressor is the first person to use or threaten to use deadly physical force. *Williams v. Chappius,* No. 16CV08329PAESN, 2018 WL 7133267, at *8 (S.D.N.Y. Nov. 16, 2018), *report and recommendation adopted,* No. 16CIV8329PAESN, 2019 WL 330630 (S.D.N.Y. Jan. 25, 2019); *People v. Daniel*, 828 N.Y.S.2d 125, 126 (2d Dep't 2006); *People v. Walker*, 726 N.Y.S.2d 857 (1st Dep't 2001).

Petitioner disputes Magistrate Judge Parker's findings that Petitioner was the initial aggressor. Petitioner, as evidence that he was not the initial aggressor, highlights that the victim was "getting in the Petitioner's face," that the victim's friend was telling the victim to "chill out" and "relax," and that the victim "kept pursuing [the Petitioner] and swinging his fists at him." (Doc. 17 at 6.) These circumstances were all described to and considered by Magistrate Judge Parker in her analysis. (*See* Report 3–4.) The victim was swinging "over his friend" trying to hit the Petitioner. (Doc. 2-2 at 239:2-14.) The only witness who observed the shooting ("Wolf") testified that he didn't think that any of the swings made contact with Petitioner. (*Id.* at 239:17–18.) With respect to the gun, Wolf testified that he observed the victim "swiping the man's gun" which was in Petitioner's hand when Wolf saw it. (*Id.* at 239:19-240:23.) Contrary to Petitioner's assertion, (Doc. 2 at 13), Wolf does not testify that the gun was holstered when the victim swiped at it. None of the victim's actions can reasonably be interpreted as deadly force, since "a punch from an ordinary person does not generally constitute deadly physical force," *People v. Kerley*, 63 N.Y.S. 3d 538 (3d Dep't. 2017). Instead, "[t]he evidence at trial establishes that defendant immediately responded to the [victim's] use of ordinary force with deadly force" by shooting the victim. *Irizarry*, 157 N.Y.S.3d at 288. Petitioner compares this case to *People v. Schwartz*, where a man accidentally killed a third party during a struggle for a gun. 562 N.Y.S.2d 619, 620 (1st Dep't 1990). Petitioner made the same comparison before Magistrate Judge Parker, who found this case was inapposite. (Report 14.) I agree. Unlike in *Schwartz*, where the defendant was ambushed after offering to sell a gun, Petitioner introduced the gun to the situation as a threat of force.

Petitioner also objects to the Report on the grounds that it "fails to include the principle that an initial aggressor may regain his rights to self-defense." (Doc. 17 at 8.) This is incorrect.

6

Magistrate Judge Parker analyzed Petitioner's argument that he withdrew from the encounter and she concluded that in making this argument Petitioner "misapprehends the applicable law." (Report at 15.) Although I disagree with Magistrate Judge Parker's analysis of New York's justification statute, I ultimately reach the same conclusion that there is no evidence that Petitioner withdrew from the altercation.

Magistrate Judge Parker explains that N.Y. Penal Law § 35.15(1) "only applies to the use of non-deadly, ordinary physical force" because "[t]he use of deadly physical force is governed by Penal Law § 35.15(2)." (Report 15–16.) I agree with Magistrate Judge Parker that Penal Law 35.15(1) applies to "physical force," however I interpret this term as being a broad term that is inclusive of "deadly physical force," rather than a narrow term meaning only "non-deadly physical force." Although the statute does not define the term "physical force," it does define "deadly physical force" as "physical force which, under the circumstances in which it is used, is readily capable of causing death or other serious injury." N.Y. Penal Law § 10.00(11). This definition supports a finding that the term physical force is intended to be inclusive of deadly physical force. Additionally, New York state case law supports that New York allows withdrawal in cases of any physical force, deadly or not. *See Irizarry*, 157 N.Y.S.3d at 288 ("[a]n initial aggressor with respect to deadly force is only entitled to the defense of justification where he withdrew from the encounter, effectively communicated such withdrawal, and the other person continued the incident with deadly force."); *see also People v. Mickens,* 631 N.Y.S.2d 687, 688 (1st Dep't 1995) ("[n]othing in the record indicates that defendant withdrew after deadly force was used.").

Although I find that the justification statute allows for an initial aggressor to withdraw after using deadly force, ultimately, it is not dispositive whether it is statutorily possible for one

7

to withdraw after initiating deadly force.  I agree with Magistrate Judge Parker that Petitioner does not demonstrate that he withdrew from the encounter, (Report 16), because Petitioner does not point to any evidence that he withdrew.  Petitioner asserts that "[a]ccording to Wolf's testimony, Mr. Brown attempted to walk away, after the gun was in view of the decedent."  (Doc. 17 at 8.)  A review of Wolf's trial transcript, (Doc. 2-2), does not reveal any testimony that supports that Petitioner tried to withdraw after brandishing his gun.

### IV.     Conclusion

Having reviewed the Report, as well as other materials in the record, I hereby ADOPT the Report and Recommendation, except with respect to the portion interpreting N.Y. Penal Law § 35.15 as only permitting withdrawal in cases of non-deadly physical force, as explained above.  I hereby DISMISS the Petition.  The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

Dated:     July 5, 2023
           New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge